## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES DOMINIC DENNIS,

          Plaintiff

     v.

OFFICER JAMES SHERIDAN, et al.,

          Defendants

CIVIL ACTION NO. 1:18-CV-1131

(WILSON, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

Presently before the Court are two motions to dismiss for failure to state a claim upon which relief can be granted, filed by Defendants Mark Rockovich ("Rockovich") and Sergeant Reilly ("Reilly") (Doc. 45); and by Defendants Marcella Lendacky ("Lendacky"), Tony George ("George"), James Sheridan ("Sheridan"), and Michael McGrath ("McGrath"). (Doc. 46). For the reasons provided herein, the Court respectfully recommends that Defendants Sheridan and McGrath's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, and that all other Defendants be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

    A.  THE ORIGINAL COMPLAINT AND FIRST AMENDED COMPLAINT

On June 4, 2018, Charles Dominic Dennis ("Dennis"), proceeding *pro se*, initiated the above captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). In his initial complaint, Dennis alleged that Sheridan and McGrath, police officers of the city of Wilkes-

Barre, falsely charged him with various offenses.[1] (Doc. 1, at 2). Dennis alleged that these charges resulted in his "wrongful arrest and incarceration in violation of [his First, Fourth and Eighth] Amendment rights, as well as other civil rights violations…[that] will become clear and more defined in future filings." (Doc. 1, at 2).

On June 18, 2018, Dennis filed an application for leave to proceed *in forma pauperis*[2] (Doc. 7), followed by an amended complaint (the "First Amended Complaint") on July 31, 2018. (Doc. 10). Therein, Dennis asserted new causes of action. (Doc. 10). Specifically, Dennis complained of Sheridan obtaining Dennis's "intake sheet and other information from the booking department where [Dennis] was admitted on May 5, 2018." (Doc. 10, at 2). As Dennis's intake sheet purportedly contained private medical information, Dennis alleged that Officer Sheridan obtained it without a warrant or subpoena. (Doc. 10, at 2). Dennis further averred that a conspiracy took place to "illegally obtain personal information about [him]," in violation of his rights under the Fourth Amendment, the Fourteenth Amendment, and the

---

[1] These charges included criminal trespass, stalking, terroristic threats, simple assault, and harassment, despite Dennis claiming that he resided with his girlfriend at the property where Officer Sheridan and Officer McGrath arrested him. (Doc. 1, at 2). Dennis does not provide a case number for his corresponding state court action. (Doc. 1; Doc. 10). However, by way of background, the Court considers the underlying criminal dockets for the state court proceedings to which he presumably refers. *See e.g. Commonwealth v. Dennis*, No. MJ-11101-0000207-2018 (Magis. Dist. Ct. May 6, 2018); *Commonwealth v. Dennis*, No. CP-40-CR-0001867-2018 (Luzerne Cty. C.C.P. May 30, 2018). The Court may properly take judicial notice of these criminal dockets as an official state court record and a matter of public record. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that, in addition to the facts alleged on the face of the complaint, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").a

[2] On November 16, 2018, the Court granted Dennis's motion to proceed *in forma pauperis* in a separate Order. (Doc. 33).

Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[3] (Doc. 10, at 2, 4-5).

The First Amended Complaint also complained of conduct that allegedly transpired during Dennis's confinement at Luzerne County Correctional Facility ("LCCF"). (Doc. 10). Dennis alleged that, on July 25, 2018, he filed an administrative grievance pertaining to his lack of law library access for three weeks. (Doc. 10, at 3). After observing this filing effort, a prison official allegedly threatened to fire Dennis from his trustee job,[4] and continued an "unprovoked verbal assault" that placed Dennis in fear of physical violence. (Doc. 10, at 3). Dennis thus asserted that the official intimidated and retaliated against him for seeking redress through LCCF's grievance system, and violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments. (Doc. 10, at 5).

On May 31, 2019, the undersigned issued a report and recommendation (Doc. 40), adopted by the District Court (Doc. 41), dismissing Dennis's claims in part, and granting him leave to amend the remainder. (Doc. 40). Specifically, the Court dismissed Dennis's retaliation claims against C.O. Renfer, finding that the allegations predicated on the "unprovoked verbal assault" following his administrative grievance filing did not rise to the level of retaliation. (Doc. 40, at 18). Verbal harassment alone does not satisfy the second prong (adverse action) of a retaliation claim. (Doc. 40, at 18-19). Further, "the use of words generally cannot constitute an assault actionable under § 1983." (Doc. 40, at 19) (quoting *Dixon v. Co*

---

[3] § 264, Pub. L. 104-191, 110 Stat. 1936, 2033–34 (codified at 42 U.S.C. § 1320d-2 note).

[4] Based on Dennis's allegations, it is unclear whether he held this trustee job at LCCF or elsewhere.

*Blantant*, No. 3:CV-16-887, 2016 WL 3647970, at *2 (M.D. Pa. July 6, 2016)).  Therefore, all claims stemming from this alleged verbal assault were dismissed with prejudice.[5] (Doc. 40, at 20).

Dennis's remaining claims of conspiracy, Fourth and Fourteenth Amendment violations related to Defendant Sheridan's access to Dennis's private medical information, as well as claims for false arrest, intimidation, and violations of the First, Fourth, and Eighth Amendments against Defendants Sheridan and McGrath, alleged in a conclusory fashion without any factual allegations in support, were dismissed without prejudice, and Dennis was directed to file a second amended complaint, with specific directions as to the boundaries of that pleading. (Doc. 40; Doc. 41). Of particular note, the Court instructed that the amended complaint must not go beyond the scope of the claims already raised, **or Defendants already named in the original or first amended complaint.**  (Doc. 40, at 25).

B.  T̲H̲E̲ ̲S̲E̲C̲O̲N̲D̲ ̲A̲M̲E̲N̲D̲E̲D̲ ̲C̲O̲M̲P̲L̲A̲I̲N̲T̲

On July 22, 2019, Dennis filed a Second Amended Complaint. (Doc. 42). In his Second Amended Complaint, Dennis asserts claims against Defendants Sheridan, McGrath, Marcella Lendacky, Mark Rockovich, Sergeant Reilly, Tony George, and the City of Wilkes-Barre, Pennsylvania. Despite the explicit instruction that the second amended complaint not go beyond the scope of claims already raised, or Defendants already named, Dennis named Defendants Lendacky, Rockovich, George, Reilly, and the City of Wilkes-Barre for the first time.

---

[5] Dennis's claims pursuant to HIPAA were also dismissed with prejudice, as that law does not create a private right of action for individual plaintiffs. (Doc. 40, at 23)

Dennis's claims arise from the circumstances of his arrest on May 5, 2018.[6] (Doc. 42). Dennis alleges that the evening before, he and his significant other, Kimberly Mcandrew ("Mcandrew"), became involved in an argument at the house where they both legally resided. (Doc. 42, at 4). Dennis left the house at approximately 10:45 pm to get pizza, talk to friends, and allow time to lapse so things would calm down between the two of them. (Doc. 42, at 4-5). Dennis returned to the house at approximately 12:30 am on May 6, 2018, to find that it was locked (which he claims was not unusual) and that he was without a key. (Doc. 42, at 5). After knocking at the front door and not receiving an answer, Dennis remembered that a window to the basement was unlocked. (Doc. 42, at 5). So, Dennis removed the screen, opened the window, and climbed inside. (Doc. 42, at 6).

Next, Dennis put his jacket in the dryer, as it had been raining that evening. (Doc. 42, at 6). While waiting for his jacket to dry, police arrived in the basement. (Doc. 42). Dennis alleges that Sheridan "forcibly grabbed me and pushed me towards the basement wall with such force that I almost fell headfirst into it." (Doc. 42, at 6). Dennis goes on to describe Sheridan pushing his face forcefully against the wall, twisting his wrist and arm behind his back, kicking his legs apart, and clipping handcuffs on his wrists "so tight that I thought the bones had snapped." (Doc. 42, at 6).

Dennis alleges that Sheridan then pulled him up the stairs from his basement by the handcuffs and continued to "push, shove, and pull" him to the police car. (Doc. 42, at 7). Dennis claims that he was verbally protesting throughout this event but did not resist arrest. (Doc. 42, at 7). Sheridan then transported Dennis to the police station, where he was held

---

[6] The resulting charges were eventually dismissed. (Doc. 42, at 39).

until his arraignment the next morning. (Doc. 42, at 7). McGrath, Dennis claims, was present throughout this incident and did not attempt to intervene. (Doc. 42, at 7).

On May 25, 2018, Dennis had a preliminary hearing with Sheridan present. (Doc. 42, at 8). Dennis claims that, through conversation with McAndrew, he learned that Sheridan or McGrath had fabricated a witness statement to be signed by his girlfriend's mother. (Doc. 42, at 8). He also alleges that Sheridan threatened his girlfriend when she attempted to testify on Dennis's behalf at his preliminary hearing. (Doc. 42, at 8). After this hearing, Dennis remained detained on bail until January 8, 2019, when the charges were dismissed. (Doc. 42, at 9, 39).

Construing the Second Amended Complaint liberally,[7] the Court finds that Dennis asserts the following claims against Sheridan and McGrath: unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments arising from entry into his home and seizure of his person; violations of the First and Eighth Amendments arising from his "fear of imminent peril resulting from an offer or attempt to injure him," unreasonable seizure of his person, violation of his right to expression free from government interference, and restricting his freedom of speech; a state law claim of assault arising from Sheridan pulling him up the stairs and shoving him throughout the arrest; a state law claim of battery arising from "pinning" him against the basement wall and conducting a pat-down search without the requisite level of suspicion; and a state law claim of false imprisonment arising from detention through unlawfully obtained evidence, and unreasonable belief that Dennis had committed

---

[7] See *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(explaining that a *pro se* complaint should be liberally construed).

6

an offense. (Doc. 42, at 9-11).[8] Dennis did not raise the state law claims of battery, assault, or false imprisonment in his Initial Complaint or Amended Complaint, (Doc. 1), (Doc. 10).

Dennis raises claims against Defendants Lendacky, Rockovich, George, and the City of Wilkes-Barre pursuant to a *respondeat superior* theory for their oversight of Sheridan and McGrath's actions. (Doc. 42, at 2). His claim against Reilly arises from Reilly providing prison documents and records about Dennis to Sheridan. (Doc. 42, at 1-2). It appears from what Dennis has labeled as 'Exhibit A' that those documents and records consisted of Dennis's address. (Doc. 42, at 27, 30).[9]

On August 5, 2019, Defendants Reilly and Rockovich jointly filed a motion to dismiss for failure to state a claim. (Doc. 45). In support of their motion, they argue that they are accused of unlawfully providing the Wilkes-Barre police with Dennis's address and that, even if true, Dennis does not have a constitutional right to privacy in his address. (Doc. 47, at 9). A person's address, they argue, is readily available to the public through arrest records, judicial proceedings, and police reports. (Doc. 47, at 9). Additionally, Rockovich and Reilly argue that they are entitled to qualified immunity as government officials. (Doc. 47, at 12-13).

On August 12, 2019, George, Lendacky, Sheridan, and McGrath jointly filed a motion to dismiss and a motion to strike. (Doc. 46). In support, George and Lendacky argue that they were not properly served with the action, that the only factual allegations involving them are a "wide-sweeping *respondeat superior* theory" for the torts committed by others which is not

---

[8] The Court notes that, though Dennis describes post-arrest conduct periodically throughout his complaint, he restricts his causes of action (which are clearly labeled) to conduct that occurred during his arrest. (Doc. 42, at 9-12).

[9] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

actionable under § 1983, that they are entitled to qualified immunity as government officials, and that because they were not named in the Complaint (Doc. 1) or Amended Complaint (Doc. 10), they are beyond the scope of the Second Amended Complaint as ordered by the Court. (Doc. 50, at 27).

Sheridan and McGrath argue that Dennis's Second Amended Complaint merely recites the elements of a § 1983 action and that his Constitutional claims do not meet the factual pleading standards set out by the Court in *Iqbal.* (Doc. 50, at 14-15) (citing *Iqbal*, 556 U.S. at 678). With regards to Dennis's claims of assault and battery, they argue that police officers are privileged to use "a reasonable amount of force when effectuating an arrest," and that their use of force was necessary at the time. (Doc. 50, at 15) (*citing Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). Dennis's claim of false imprisonment, they argue, should fail because they had probable cause to detain him (Doc. 50, at 17). They also argue that all claims against them should be dismissed because they are entitled to qualified immunity. (Doc. 50, at 25-26).

The Court now considers these motions to dismiss. (Doc. 50).

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips [v. Cnty of Allegheny,*

8

515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In order to state a valid cause of action, a plaintiff must provide some factual ground for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A trial court must assess whether a complaint states facts upon which relief can be granted, and should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When it comes to the factual grounds, however, a court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien &Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

9

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nonetheless, *pro se* plaintiffs are still subject to the basic pleading requirements of Rule 8. *Rhett v. New Jersey State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

B. Effect of Dennis's Second Amended Complaint

At the outset, the Court considers which filing stands as the operative complaint in this action. As a matter of law, an amended complaint takes the place of any previously filed complaints, effectively invalidating them, unless the amended complaint specifically refers to or adopts the earlier pleading. *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'") (*quoting New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir.1996)); *see also Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit.").

10

The Court was abundantly clear that Dennis's Second Amended Complaint is to stand alone without reference to other complaints he had filed. (Doc. 40, at 25). The Second Amended Complaint was not to include claims which had not been raised in the Original Complaint or Amended Complaint. (Doc. 40, at 25). Therefore, Dennis's Second Amended Complaint, (Doc. 42), stands as the operative complaint in this action, superseding all others, *W. Run Student Hous. Assocs., LLC*, 712 F.3d at 171, and is effective only as it relates to those claims which Dennis raised in his Original Complaint or Amended Complaint.

## III.   DISCUSSION

### A.   CLAIMS AND DEFENDANTS NOT NAMED IN THE ORIGINAL OR FIRST AMENDED COMPLAINT SHOULD BE DISMISSED.

The Court was abundantly clear that Dennis's Second Amended Complaint is to stand alone without reference to other complaints he had filed. (Doc. 40, at 25). The Second Amended Complaint was not to include claims not raised or Defendants not named in the Original Complaint or Amended Complaint. (Doc. 40, at 25). Dennis did not raise the state law claims of battery, assault, or false imprisonment in his Initial Complaint or Amended Complaint, (Doc. 1), (Doc. 10). As such, it is recommended that these claims be dismissed. Further, the Second Amended Complaint names, for the first time, Defendants Lendacky, Rockovich, George, Reilly, and the City of Wilkes-Barre. It is respectfully recommended that these Defendants be dismissed as well.[10]

---

[10] Even if the Court were to consider the merits of the claims against these Defendants, they would not survive Defendants' motion to dismiss on the merits. The claims against these Defendants Lendacky, Rockovich, George, and the City are brought under a theory of *respondeat superior* for the acts of Sheridan and McGrath. (Doc. 42, at 2). Dennis asserts no other grounds for their liability. (Doc. 42). The Third Circuit has held that defendants in a civil rights action must have been personally involved in the alleged wrongs, and that *respondeat superior* cannot be the sole basis for such action. *Rode v. Dellarciprete*, 845 F.2d 1195,

B.  Motion to Dismiss pursuant to Rule 12(b)(5)

Defendants Sheridan and McGrath seek to have the Second Amended Complaint

dismissed on the grounds that they were not properly served with the pleading pursuant to

Federal Rule of Civil Procedure 12(b)(5). Rule 12(b)(5) allows for dismissal based on

insufficient service of process. Fed. R. Civ. P. 12(b)(5); *Wright & Miller*, 5B Fed. Prac. & Proc.

Civ. § 1353 ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery

or the lack of delivery of the summons and complaint."). Under 12(b)(5), "the plaintiff bears

the burden of establishing that the service of process has been performed in accordance with

the requirements of Federal Rule of Civil Procedure 4." *Boteach v. Socialist People's Libyan Arab*

*Jamahiriya*, 759 F. Supp. 2d 548, 550 (D.N.J. 2010) (quoting *McDaniel v. Greyhound Lines*, Inc.,

---

1207 (3d Cir. 1988). Actual knowledge and allowance of the specific action at issue is sufficient to bring a claim, but knowledge and allowance must be alleged and described with particularity. *Rode*, 845 F.2d at 1207.

As to Defendant Reilly, Dennis claims Reilly violated his Fourteenth Amendment rights when he provided Dennis's prison records, containing his address, to Sheridan. (Doc. 42, at 27, 30). Liberally construing Dennis's complaint, this action was in violation of his Fourteenth Amendment right protecting individuals from government disclosure of personal information. *See Roe v. Wade*, 410 U.S. 113, 152 (1973). To qualify as constitutionally protected, the personal information must be subject to a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). Information readily available to the public, including judicial proceedings, police reports, arrests, and other public documents, are not entitled to constitutional protection. the information contained in a police report is not protected by the confidentiality branch of the constitutional right of privacy. *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991). Further, even if this Court were to find that Dennis states a claim against Reilly for the distribution of his private information, Reilly would likely be entitled to qualified immunity on this issue. *See Eades v. Wetzel*, 2019 WL 6255214 (M.D. Pa. 2019) (granting qualified immunity to defendants who were alleged to have violated plaintiff's right to privacy for releasing his personal information after finding no relevant Supreme Court or Third Circuit precedent holding that corrections officials' decision to release inmates' personal information to a third-party vendor violates the right to privacy under the Fourteenth Amendment.)

12

2008 WL 2704774, at *4 (W.D.N.C. July 7, 2008)); *Carpenter v. Young*, 2004 WL 1858353, at *2 (E.D. Pa. Aug. 3, 2004) (same).

In response to Defendants' allegation that they were not properly served, Plaintiff submits that he "personally served defendants with complaint and hand delivered each complaint and took pictures of himself handing complaint to said Defendants" (Doc. 54). Additionally, Plaintiff included in his brief in opposition a verification, sworn under penalty of perjury, that the activities described in the brief were true and accurate (Doc. 54, at 5), and included a certificate of service that he served a copy of the amended complaint on the Defendants (Doc. 54, at 6). The undersigned finds that Plaintiff has met (albeit tenuously) his burden of showing that service was effected. *See Erie Ins. Exch. v. Gree USA, Inc.*, No. 3:CV-18-2126, 2019 WL 1405854, at *2 (M.D. Pa. Mar. 28, 2019) (This burden can be met by a preponderance of the evidence using affidavits, depositions, and oral testimony.) (internal citations omitted).

Further, as dismissal of a complaint under Rule 12(b)(5) must be entered without prejudice, *Umbenhauer v. Woog*, 969 F.2d 25, 30 n. 6 (3d Cir. 1992), and that counsel for Defendants has entered his appearance on their behalf, and that this case has been prolonged long enough at this juncture, the Court recommends that Defendants' motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(5) be **DENIED**.

C. Plaintiff's § 1983 Claims Against Defendants Sheridan and McGrath

Only one count remains before this Court. In Count I of his Second Amended Complaint, Plaintiff incorporates by reference the allegations made in the previous paragraphs, and then makes a general claim for damages under 42 U.S.C. § 1983. (Doc. 42,

at ¶¶ 34-35). Defendants Sheridan and McGrath move to dismiss this count as devoid of any factual allegations which might give rise to any claims, and only containing threadbare recitals of the elements of a 1983 action. When considering a motion to dismiss, the Court must take all facts as alleged in the complaint as true. *Jordan*, 20 F.3d at 1261. Any reasonable inferences that can be drawn from those facts are to be construed in the light most favorable to the plaintiff. *Jordan*, 20 F.3d at 1261. If those facts and inferences make out a cognizable claim, then the motion to dismiss must be denied. *Jordan*, 20 F.3d at 1261. Liberally construing this *pro se* complaint, the Court finds that Dennis does plausibly allege Fourth and Fourteenth Amendment claims for illegal seizure of his person and excessive force.[11]

A law enforcement officer's use of excessive force in the course of an arrest or investigatory stop constitutes an unlawful "seizure" under the Fourth Amendment. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 583–84 (M.D. Pa. 2013); citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir.2004). To determine whether specific conduct qualifies as excessive force, the court must examine its objective "reasonableness." *Broadwater*, 945 F.Supp. 2d at 583; citing *Graham*, 490 U.S. at 395–96, 109 S.Ct. 1865. In making this determination:

> The court should consider the severity of the crime, the suspect's "immediate threat" to the safety of officers or others, resistance to arrest, attempts to flee, and access to weapons. *[Graham, 490 U.S.]* at 396, 109 S.Ct. 1865; *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir.2006). The court should also consider the duration of the law enforcement officer's use of force, whether the officer was attempting to effect an arrest, and the presence of accomplices. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997) (*abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir.2007)). The court must examine the use of force

---

[11] These are claims related to and initially brought by Plaintiff in the original and first amended complaints.

from "the perspective of a reasonable officer on the scene," without the benefit of hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

*Broadwater*, 945 F.Supp. 2d at 583.

Dennis's complaint, as a matter of law, sufficiently alleges a claim of unlawful seizure of his person and excessive force. Taken as true, the plausible allegations may establish a violation of his constitutional rights pursuant to the Fourth Amendment.

Dennis's alleges his Fourth and Fourteenth Amendment rights were violated when Sheridan and McGrath entered his home, seized his person, and made intentional and offensive contact with his body. (Doc. 42, at 9). Dennis claims that Sheridan and McGrath illegally entered his home and detained him without sufficient cause. (Doc. 42, at 1). Dennis was in his basement unarmed and intoxicated at the time of his arrest, there were two officers present, and Sheridan testified that Dennis did not resist arrest or "give [him] any problems." (Doc. 42). The 'intentional and offensive contact' includes shoving him 'forcefully' into a wall, dragging him up his basement stairs by handcuffs, 'pushing and shoving' him throughout his residence, and applying handcuffs "so tight that I thought the bones had snapped in my wrist." (Doc. 42, at 6-7). He alleges that Sheridan "forcibly shoving me against the wall … pressing my face against the stone and concrete basement wall … twisting my wrist and arm behind my back …" and applying handcuffs with enough tightness to cause continuing injury…." Dennis alleges that he continues to experience "shooting pain and numbness" in his arms and wrists from the application of the handcuffs. (Doc. 42, at 6-7). Dennis claims that these actions deprived him of his liberty without due process, deprived him of his right to be free from unreasonable search and seizure, and, liberally construing the

complaint, deprived him of his right to be free of excessive force. (Doc. 42, at 9). *See Green v. New Jersey State Police*, 246 F. App'x 158, 161 (3d Cir. 2007).[12]

Therefore, it is recommended that Defendants' motion to dismiss Dennis's § 1983 claims of illegal seizure of his person and excessive force be **DENIED**.

### D. SHERIDAN AND MCGRATH'S QUALIFIED IMMUNITY FROM CIVIL DAMAGES

In their motion to dismiss, Sheridan and McGrath assert that they are protected from liability due to qualified immunity. (Doc. 50, at 25). Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). However, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). The key

---

[12] McGrath is potentially liable insofar as Dennis's Fourth Amendment rights were violated, and he could have but did not intervene. *See* Smith, 293 F.3d at 652; *Supra*, at 21.

determination thus is whether "immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

Having determined that Dennis has adequately alleged that Defendants Sheridan and McGrath violated his constitutional rights, the Court will proceed directly to the second prong of the qualified immunity analysis.[13] "A right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater*, 945 F. Supp. 2d at 585. A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Further, the Third Circuit has noted that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 n.4 (3d Cir. 2001). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) (*quoting al–Kidd*, 563 U.S. at 742).

---

[13] The Supreme Court has noted that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735.

There is no doubt that the subject constitutional rights were clearly established on the date of the incident in question—May 5, 2018. *Broadwater*, 945 F. Supp. 2d at 586; *citing Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and *Sharrar v. Felsing*, 128 F.3d 810 (3d Cir.1997) (setting forth factors governing the reasonableness of an officer's use of force); *see also Green v. N.J. State Police*, 246 Fed. App'x 158, 163 (3d Cir.2007). Further, a liability for a failure to intervene in the use of excessive force is clearly established. *Broadwater*, 945 F. Supp. 2d at 586; *citing Smith v. Mensinger*, 293 F.3d 641 (3d Cir.2002); *Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir.1995); *Garbacik v. Janson*, 111 F. App'x. 91, 94 (3d Cir.2004).

For the above reasons, it is recommended that Defendants' motion to dismiss on the basis of qualified immunity be **DENIED**.

## IV. MOTION TO SUPPLEMENT THE AMENDED COMPLAINT AND LEAVE TO AMEND

Dennis seeks to leave to file a supplemental complaint so that he may allege and detail (1) new symptoms which have arisen, (2) additional information he believes was communicated in violation of his Constitutional right to privacy, and (3) that Defendant Reilly should be substituted for C.O. John Doe. (Doc. 56). Specifically, Dennis alleges that he has suffered a relapse of symptoms arising from his arrest at issue and is now unable to work. (Doc. 56, at 4-5). Dennis also submits that more personal information than merely his address was wrongfully disclosed by Defendants and that leave should be granted to make this amendment. (Doc. 56, at 6-7). Finally, Dennis wishes to provide reference to policies and customs of the Luzerne County Correctional Facility and the Wilkes-Barre Police Department. (Doc. 56, at 8).

Rule 15(d) of the FEDERAL RULES OF CIVIL PROCEDURE governs motions to supplement, and states in pertinent part:

> "On a motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Fed. R. Civ. P. 15(d).

As with motions to amend, whether to grant a motion to supplement rests with the sound discretion of the district court. *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988) (citing *Bates v. Western Electric,* 420 F.Supp. 521, 525 (E.D. Pa. 1976)). Upon making this determination, the Court may consider "the promotion of a justiciable disposition of the case, the delay or inconvenience the allowance of such a pleading will cause, and the prejudice to the rights of the parties to the action." *Nottingham*, 709 F. Supp. at 544. However, a Court need not grant leave to supplement when the motion "relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts ...." *Deen-Mitchell v. Lappin*, No. CIV.A. 1:11-1902, 2012 WL 74900, at *4 (M.D. Pa. Jan. 10, 2012) (citing *Nottingham*, 709 F.Supp. at 544).

The Court has reviewed Dennis's motion, construing it liberally. *See generally Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2002) ("Federal Rule of Civil Procedure 15 embodies a liberal approach to pleading."). Even under this liberal standard, however, the Court finds that granting Dennis's motion would not be justified in this case. Specifically, a review of his motion reveals that the only "transaction, occurrence, or event that happened *after the date of the pleading to be supplemented*" would be the additional adverse symptoms he has experienced. *See* Fed. R. Civ. P. 15(d) (emphasis added). Though these may be important, they may be

19

introduced at a point when damages are being considered. There is no need to submit this update in a supplemental complaint.

Dennis points to no other transaction, occurrence, or event that occurred after the date of his second amended complaint, therefore Dennis's Motion to Supplement the Complaint is **DENIED**.[14]

Further, although *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, *see Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007), the undersigned finds that granting further leave to amend would be futile or result in undue delay. *Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004); *see also In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) ("A district court has 'substantial leeway in deciding whether to grant leave to amend.'") (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Given that this is Dennis's third draft of the complaint in this case, the court finds that undue delay will result in granting Dennis yet another chance to amend his complaint. As such it is recommended that he be denied any further leave to amend.

## V.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends as follows:

1.   The motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(5) be **DENIED;**

2.   The motion of Defendants McGrath and Sheridan (Doc. 46) to dismiss Plaintiff's § 1983 claim of excessive force be **DENIED;**

---

[14] Even the substitution of Defendant Reilly for C.O. John Doe is futile, because, as more fully set forth above, the allegations against Reilly related to the dissemination of information about Dennis, do not state a plausible claim.

3.      The motions of the remaining Defendants (Doc. 45; Doc. 46) –
        Defendants Lendacky, George, the City of Wilkes Barre, Reilly, and
        Rockovich – be **GRANTED** with prejudice and these Defendants be
        terminated from this case;

4.      Plaintiff's motion for leave to file a supplemental complaint (Doc. 56)
        be **DENIED**;

5.      This case be remanded to the undersigned for further proceedings.

**Dated: February 21, 2020**                    *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES DOMINIC DENNIS,

        Plaintiff

    v.

OFFICER JAMES SHERIDAN, et al.,

        Defendants

CIVIL ACTION NO. 1:18-CV-1131

(WILSON, J.)
(MEHALCHICK, M.J.)

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 21, 2020**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: February 21, 2020**

        *s/ Karoline Mehalchick*
        **KAROLINE MEHALCHICK**
        **United States Magistrate Judge**